We will begin the argument in Dunston v. Harrison and Mr. Ellis, we'd be happy to hear from you. May it please the court, my name is Nick Ellis and along with my partner Caroline Mackey, we represent the defendants in this case, the Wake County Sheriff Donnie Harrison, and the primary defendants that are the subject of this appeal, Detention Officer Douglas and Lieutenant Greenfield. We're here today, Your Honor, because the actions of these officers did not violate any constitutional right of the plaintiff. Because the officer's actions were in response to the plaintiff's verbal refusal to comply with the officer's orders, physical refusal to comply with the officer's orders, and the initiation by the plaintiff of physically aggressive behavior towards the officers. In looking at what force was used by the officers, I think that what we can do is look at the amount of force that was utilized and the duration of the application of that force. In the first incident, the jail pod incident involving Officer Douglas, what we had was a situation where the plaintiff puts his food tray down, frees up both hands, and begins to initiate a physical move towards the officer. In the inmate processing center incident involving Lieutenant Greenfield, there the plaintiff, again, verbally refused to comply with orders, physically refused to comply with orders, and there actually assaults or batters the officer or lieutenant by a headbutt. But in both of these situations, again, the amount of force did not involve the use of weapons, batons, nightsticks, stun guns, tasers. It only involved the actual physical takedown of the noncompliant aggressive inmate by bodily force. The district judge made the point that on the tray incident or the dining tray incident, said that the detainee was trying to disengage and walk away from the officer. Video reveals that as Officer Douglas approached Dunstan from behind the desk, Dunstan picked up his tray and began walking away. So is he trying to disengage, as the district court says, or is there a dispute on that point? Your Honor, in all due respect to the district court, I believe the district court erred in reaching that conclusion. Because, as we know, we have video here. And if the video blatantly contradicts the sworn testimony, then the court can disregard the testimony and look at the video to reach its conclusion. The video clearly shows that the plaintiff never steps back away from the desk where Lieutenant Douglas is, or excuse me, Officer Douglas, and never turns his back, certainly on Officer Douglas, never makes any motion to go towards the tables where all the other inmates are seated having their meals. So, again, all due respect to the trial court, that was an error to look at the video and reach that conclusion. Because there is never any disengagement nor any intent to disengage. In fact, what the video shows is that there is a security desk separating Officer Douglas from the plaintiff. And the plaintiff, if this was the desk separating the two, the plaintiff moves to the side so that he is no longer faced with a barrier between he and the officer but has a direct line at him. The video didn't catch the entire confrontation, did it? I mean, part of it took place behind some luncheon trays or what have you. Judge, the trial court talks about, and the plaintiff alleges, I don't think there's really any basis to support that allegation. Yes, that while the officer does the leg sweep maneuver, textbook leg sweep maneuver and takes him down, there the plaintiff punches, kicks, resists for all he's worth, requiring another officer to come in, requiring an all call to be made, another officer to come in. They're scuffling. They do get behind what I'll call the meal cart. But there is no evidence that can be seen that the plaintiff has been subdued. He's brought under control and the officers are continuing to apply force. In fact, you do see when the plaintiff comes out from view, he is still resisting, still kicking, still punching. And the officers finally do get him under control, get him up. They only are able to get handcuffs on one of his hands. But as soon as they get him up, the application of the physical force by the officers stops. There wasn't any mace or... I'm going to call on my colleague, Judge Hamilton. He has a question. Judge Hamilton? I think that the plaintiffs argued in their brief that they were not disputing the facts found by the district court. Now, you're disputing the facts found by the district court. What do you say about that? I'm not sure what the plaintiff agreed to. We're the defendants in this case. And we do believe that the fact found by the court, again, is one that is not supported by the video at all. And I think it's very, very clear as far as the court concluding that there was a disengagement. The video clearly demonstrates that the plaintiff never retreats, never turns his back, never takes any physical action to indicate compliance with the order to take your tray, go sit at the table, and join the other inmates. Let me ask you this. This is a very fact-intensive case. And I think it's one in which we must accept Dunstan's version of the facts. Isn't that correct? No, sir. I don't believe so, Your Honor. I think that if we don't have video, then I think we do have a factually disputed case. I agree with that. But we do have the video. And as the trial court did point out, the case law, certainly in this circuit and the country, is that if the video blatantly contradicts that testimony, then the testimony can be disregarded and the court can reach its conclusion based on what the video or other objective evidence establishes. Well, as Judge Wilkinson pointed out, the video doesn't show everything. Your Honor, the video, the only part of the video or action that's not on the video is when the first officer walks in and, again, there's an issue about did he get his food tray on time. It's not relevant as far as was the inmate's fault, was it the officer's fault. He didn't get his tray on time. So another officer has been called up to bring that tray in. That officer testified, and there's really no dispute about this, that this is Officer James, that when he came in with the tray, that the plaintiff immediately, physically, in an agitated, aggressive manner, tried to take the tray from him. Is that the part that's not on the video? That is not on the video. That's correct. What does Dunstan say about the time when it was not on the video? Your Honor, I don't believe that there's any express testimony that I can recall at this point in time about that. I would probably say it's neither here nor there. But, again, the officer brings in the tray. He does not give it to the plaintiff but instead gives it to Douglas because Douglas is the officer in control of the pot. So I think that is the only portion of the interaction of the plaintiff not getting his food tray that's not on the video. And, of course, there's no use of force at that point in time. There are no allegations by the plaintiff that there was any constitutional right violated during that period of time. So while that's not captured on the video, I don't believe it is determinative about whether Douglas is entitled. There's no weapon or mace used or anything? That's correct, Your Honor. But what did the takedown procedure involve? Did they just lift him and throw him to the floor or what? What Officer Douglas did, and, again, very clear on the video, the plaintiff has taken his food tray and set it down. He now has both hands free. He has stepped to the side of the desk where he has a direct line to an uninterrupted line to the officer. And so the officer, under policy, is entitled to use reasonable force necessary to respond to an imminent threat of assault. And what he does is he undoes his radio, has a cord attached to it, which can be used as a choking device against the officer, goes out and then, in response to your question, Judge, does a textbook leg sweep. Simply puts his hands on the inmate, takes a leg behind the inmate's leg, and takes him down. And that's it. And if the plaintiff had not started kicking, punching, twisting, everything he can to resist, then that's the end of the physical action taken by the officer. But the video clearly shows about 90 seconds of the plaintiff kicking, screaming, resisting, refusing to comply, doing everything he can, which requires additional officers to then have to come in. And again, no mace, no other weapons, no nightsticks, anything of that nature used on the plaintiff. But they finally stop doing and get him under control. And at that point in time, all the officer has done is use a takedown maneuver, period. The rest is in response to the plaintiff striking and punching, which, of course, led to the plaintiff being charged with assault on a government official. And what the evidence from the video clearly establishes is that the officer used no more force than reasonably necessary. Did not apply it for any longer than reasonably necessary. And therefore, Officer Douglas, by the video evidence, clearly did not violate any constitutional right of the plaintiff. He's entitled to qualified immunity. We think that is also established by the plaintiff's guilty plea to the charge of assault on government officials. Now, the basis of that judicial estoppel is that in North Carolina... Is that subject to review on a qualified immunity appeal? Your Honor, I think because, and I'll address that and why it relates to the qualified immunity, because what the plaintiff has done is pled guilty to that charge in North Carolina. And in North Carolina, that charge includes, as an element of it, that the officer is lawfully carrying out and exercising the duties of that office. He's not violating anybody's constitutional rights. The plaintiff pled guilty to that in exchange for a plea. Now he's coming to court and saying, no, I contend that Officer Douglas did violate my constitutional rights, that he did act outside the lawful duties of that office. And that is why we think that the court can consider judicial estoppel in this appeal, because it does relate to... You haven't talked about the processing center incident. Do you have something you want to say about that? Because the time is running... Yes, Your Honor. As far as the processing center, that one is even clearer than the jail pod center, because there what you have is the officer is guiding, very, very peacefully guiding the plaintiff into a cell. This is that jail pod incident. Guiding him to a cell. He refuses. Again, verbal refusal, physical refusal. He turns and puts himself against the wall so he's got some leverage. And he's resisting the officer. There, the officer finally is trying to use a soft-hand approach to guide him into that room. And there, very clearly, the inmate not only resists, but verbally, not verbally, physically assaults the officer through a headbutt. That is very clear on the video. But he was handcuffed? Yes, sir. He was handcuffed, but he strikes the lieutenant with his head, which then the lieutenant's response is about five or six seconds. Takes him, one hand on the back, one hand in the front area, takes him down. The video shows about five or six seconds before Lieutenant Douglas moves away from the plaintiff. No sign of any injury or anything of that nature. So, again, you have a very limited amount of force being applied for a very limited period of time. So, we think in both of these incidents that what you have is the officers, and the court, of course, has stated historically that the officers in these situations, these are tough situations in a jail setting. We've got multiple inmates around sizing up what Douglas is going to do, how he's going to respond. He's being challenged. He cannot sit there and say, inmate, please do as I've told you repeatedly. He has to take action. Greenfield certainly has to take action because he's now been assaulted, been battered by the inmate. And, again, the response certainly complies with what the Constitution allows. And the Constitution does not give the plaintiff a right to engage in that type of conduct, aggressively, physically initiating behavior towards these officers without an expectation that the officers can use the limited amount and duration of force that they did use to bring the inmate back into compliance. Reasonable actions taken to restore order, no maliciousness, no sadistic use of force. And because of that, we believe that the... On this latter incident, which is the processing center incident, district court said Dunstan's allegation was, I mean, he, you know, it seems to me clear the district court felt that he was refusing verbal orders to enter the room and that he was initiated a headbutt and everything. But I think what concerned the district court was, as he put it, Lieutenant Greenfield continued beating him after he was fully restrained on the floor and that that wasn't contradicted by the record. What do you say about that point? Your Honor, I see my time's up. May I respond? Yeah. Again, all due respect to the trial court, just believe that that is not what the video shows. Again, you can look at the video and it shows that approximately five or six seconds from the time of takedown until the time the officer has retreated. So I think in that limited period of time, certainly, it's going to take five or six seconds to get the inmate under control. So there was no sadistic, malicious, gratuitous use of force being applied by Lieutenant Douglas. I think that is clear by the video, and as such, a qualified immunity can be granted. All right. We have some time for rebuttal. Thank you, Your Honor. Mr. Doggett. Good morning, Your Honors. May it please the Court, my name is Eric Doggett and I represent the affiliate, Edward Dunstan, in this case. Your Honor, this Court should affirm Judge Fox's denial of qualified immunity at summary judgment because Dunstan has demonstrated that his 14th Amendment due process rights, which were clearly established at the time, were violated in each of these three incidents and the appellants have not met their burden to show that those rights were not clearly established at the time of this incident. I think this is a very factually intensive question and I need to set the record straight. There are different opinions about what happened, but first, this Court is required by law to review the facts as the District Court found them and apply and see if the law was applied correctly.  He just had to look at them in the light most favorable to your client. Yes, Your Honor, unless those facts were blatantly contradicted by the videotape. You know, I was watching NFL football. This is like the video replay. Is there conclusive evidence that would overturn the call of the judge in the field? And that's what's required in this case. Why is it that this one inmate gets involved repeatedly in these confrontations? Well, Your Honor, in this case, you know, first we have to look at these incidents. What we're talking about right now, what's under appeal, are three incidents basically in the same afternoon involving this one officer. These are all in the same afternoon? Yes, these are all the same day. And basically, these are three parts of a given incident. How long has this individual been incarcerated? Well, at this time, Your Honor, he had been incarcerated for about four months as a pretrial detainee. He spent over a year incarcerated and was actually tried by a jury and found not guilty of the underlying charge which he was put in jail for originally. And he subsequently was tried in a bench trial for assault on a government official related to this incident with Douglas that occurred in the pod. During his trial, or prior to his trial, his attorney had subpoenaed this video and attempted to obtain this video. And the court actually ordered that the video be produced. And it was not produced. And he was tried in a bench trial and found guilty. He subsequently tried to appeal that for trial de novo in superior court. But later on, he had prevailed on his underlying criminal charges that he was originally arrested for, incarcerated for. And he was facing a very lengthy period of time in jail. And at that point, without the video, he opted to go ahead and plead guilty. And in his plea allocution, he admitted this factual basis for his plea allocation was during that altercation with Officer Douglas that he hit him in the back of the head once during that altercation. You're talking about his guilty plea on the assault? On the assault on a government official charge, yes. Does that, your opponent suggests that there's a judicial estoppel? Yes, Your Honor, he does suggest that. However, first, that issue is not before this court properly. Because that is not an interlocutory issue. It was not certified for appeal. And if this court does find that it is going to review that, the standard for review of judicial estoppel is abuse of discretion. And this court's case law regarding this in Lowry, which was cited in the case, clearly shows that it's only the factual speculations that are, factual admissions that are made in that plea that are being used to judge whether judicial estoppel applies. And in that case, that was a Virginia, the defendant in that case, or the plaintiff, had pled guilty to malicious injury, inflicting malicious injury on a law enforcement officer. And he pled guilty to that. And that code actually contains a very similar provision in North Carolina's code that the injury is inflicted on a law enforcement officer during the commission of his lawful duties, his official duties as he did that. Yet this court did not find that part of it relevant. What they found relevant were his factual bases that were stated in his guilty plea in applying to determine whether or not his new factual basis was estoppel. Now, judicial estoppel does not bar claims. It bars a party from asserting a factual position that is contrary to a previous judicially accepted factual position he had stated earlier. And in this case, Your Honor, my client does not, and is not taking a factual position that's contrary or at odds with his previously judicially accepted plea allocution in this case. Contrary to what the appellants argued. And now looking at the facts of what happened here, Officer Douglas and Mr. Dunstan engaged in a verbal confrontation. During that verbal confrontation, Officer Douglas was behind a C-shaped control desk and Mr. Dunstan was in front of that C-shaped control desk. And during that time, Mr. Dunstan retrieved his tray, finished his argument or lecture to Officer Douglas, and you can see him wagging his finger at him from behind as he's talking with him about it. Then he takes his tray and turns to go sit. Now, while he's doing that, Officer Douglas steps from behind the control desk around the C and comes up to face Douglas and tells him that, I'm going to kick your old ass. And what his language actually even offended Officer James who was standing nearby there. And while he's saying that, the video shows step by step, you can see Officer Douglas take off, start to take off his utility belt and then take off his radio. Well, Your Honor. When somebody removes their utility belt. Your Honor, that's a highly unusual thing that officers are not trained to do. And because my expert report is under seal, I don't want to discuss it in too much detail here in the oral argument. However, I will say that that was a very unusual event that officers are not trained to do. And I'd say it's akin to an officer taking off his badge and gun, getting ready to execute it. The expert report is sealed up from us? It's not sealed from you, Your Honor. However, I believe the rules refer to us not discussing it at oral argument. So I don't want to refer to it too much at oral argument. But it's in the record for your review. And when Dunstan hears Officer Douglas say that, as he started to walk away, and sees him removing his duty belt, he doesn't hear Officer Douglas give him a command to do anything because he's complying with his commands. What he sees is an officer who's getting ready to carry through on his threat to kick his ass, which is what he told him he was going to do. And so when it happens, he understandably takes a defensive posture where he actually steps to the side to the back of it, sets his tray down, and kicks off his slippers, and actually steps back waiting to get taken down. And then Officer Douglas charges at him. And you have to watch the videos, Your Honor, because when you hear it described as a take down or place to the ground, you really need to see what this entails. He gets charged at, picked up, slammed down, not dropped, but slammed down forcefully in the back of his head. And then Officer Douglas is on top of him. And then he starts a barrage, a fusillade, of hitting him with his closed fists. And that continues for a bit. And Officer James then comes to assist. Officer James never strikes my client. By the way, no other officer ever strikes my client in the pod. And then other officers come to assist. My client is dragged and pulled behind a food cart. And the food cart kind of moved as well, too. And it blocks the view for a bit. But what is visible... That's the part that the video doesn't show. In the pod, yes, Your Honor. And during that time... How much time does that last? Your Honor, the total incident from start to finish is about a minute and a quarter, approximately a minute and a quarter. And I would say a good 30-plus seconds, I believe, are behind that. Approximately. And I'm just stating that off the top of my head here. I'm not asserting that as a fact here. But during that time, the other officers go. And they fully restrain him physically. And they command Douglas to get off of Dunstan. But Douglas refuses to and continues to hit him and strike him with his closed fists. The officers have to physically remove him off of him. And then he attempts to reengage again until he's physically taken out of the pod by another officer. And this is Douglas, the officer, who's taken out of the pod. And during that time, the other officers never strike my client. They assist him off the floor. They take him out. And that's the end of the pod incident. But I will say what's also important is that during that incident, the Wake County Sheriff's Office had a detention use of force policy that basically stated that force is not permitted to be used in response to verbal provocation or where an inmate has abandoned his resistance. And Douglas initiated this physical altercation. There was absolutely no need for any physical altercation at all. He had moved to comply. What do you say about the processing center? Well, in the processing center situation, Your Honor, first, Mr. Dunstan had already been taken down and beaten twice. He had been taken down back in the hall where he was restrained. We can come back to that. And then he was taken into the inmate processing center. As the video shows, when he was taken into the inmate processing center, the officers are standing there wanting him to go into the attorney's room and none of the lights are on in any of the rooms at that point in time. Then the lights turn on. And then they're talking to him to Lieutenant Greenfield is asking him to go into that attorney's room. Mr. Dunstan does not want to go in there. He wants to stay in front of the video camera because of the beatings he just has undergone. And he knew that in the hall area, there was no video coverage of that as well too. So he wanted to stay out in front and he didn't see any compelling reason for him to have to go into that attorney's room. And he resisted. He did resist. However, contrary to what the appellants assert, he did not headbutt Lieutenant Greenfield. Lieutenant Greenfield testified that he felt that Dunstan was going to headbutt him, but he never testified that he did. And the video does not show that he headbutted him. What you can see is that Greenfield starts taking action to try to force Dunstan into the attorney's room. Dunstan is defensively resistant. He's fully restrained behind his back and he's kind of holding his legs out trying to keep from being pushed into the room. And then Lieutenant Greenfield grabs him by his throat, puts his hand behind his neck, picks him up into the air, throws him down over backwards, and he lands on the back of his head. And he throws him into a little alcove by a stairwell, which is not under video surveillance. And while he's down on the ground, proceeds to beat him some more. And the video not only does not blatantly contradict that, but it absolutely supports that, Your Honor. And you need to look frame by frame as you watch through that and see what happened there. So, and then in the Hall incident, you know, the appellants argue that there was no factual allegations that my client was beaten on the floor while he was restrained. However, there is a basis in the record for that. And that's cited in our brief. So, you can review that, that basically after he was restrained, then he was actually beaten and kicked. All right. Is there anything further, sir? Your Honor, I would say, too, that the appellants argue that the law was not clearly established at the time that would put them on notice that their conduct violated his constitutional rights. However, it's been long established that the Due Process Clause, 14th Amendment, provides a pre-trial detainee the right to be free from the use of excessive force that amounts to punishment. I think we understand that. Well, the other thing I would just mention is in the appellant's reply brief, they actually argue that a reason that Douglas applied the force that he did was to serve as a deterrence for the other inmates in that pot, to set an example that he would respond forcefully to such situations in the future. And, Your Honor, in Bell v. Wolfish in 1979, Supreme Court ruled that retribution and deterrence are not legitimate, non-punitive governmental objectives. And in this case, you see, because McCoy had moved to comply, that either A, Douglas' conduct was in retribution for the verbal altercation, or B, it was as a deterrence. And either of those are not non-punitive or legitimate non-punitive governmental objectives. They clearly constitute punishment. And that's impermissible, and that was very well established, not just by the Supreme Court, but by this Court as well, too, in Riley v. Dorton in 1997. In addition, well, I briefed it, and you can refer to my brief with respect to Bill v. Leathers. I just wanted to point out a few factual points, and that is that the Officer Douglas' violation of the Wake County Sheriff's policy with respect to use of force is a factor that this Court has found to be relevant in determining whether force is applied maliciously or sadistically or for legitimate government purposes. And that was, Miller v. Leathers is a great example of that, and this Court found that in 1990. And... Thank you, sir. Your Honor, so I respectfully request that this Court affirm Judge Fox's denial of qualified immunity. What we're really asking for is a dismissal of the appeal, an interlocutory appeal. Yes, Your Honor. Thank you. Thank you. Mr. Ellis. Thank you, Your Honor. Just want to address a few of the points raised by plaintiff. As far as the judicial estoppel, I do believe it is appropriate for this Court to consider that at this point because it did involve, as we talked about earlier, the adoption of a fact, that fact being that the Officer did not initiate the use of force. Because if he... But you have to agree that a denial of a... by a court, a claim of judicial estoppel is not appealable under the collateral order document. At this point, I would agree with that, yes. Yes, Your Honor. But again, to the... I guess the point we're trying to make is that the guilty plea did include an adoption of the fact that the Officer Douglas did not initiate the use of force because if he did, then he would not have been lawfully exercised in the duties of his office. And the guilty plea, therefore, says you didn't do that and now he's trying to take a different position. So I think it's a factual point that was established in the criminal case and now the plaintiff is trying to take a different tact in this case. As far as the... When you read Judge Fox's opinion, which is a pretty thorough opinion, what he's emphasizing is that they continued to beat on him after he was fully restrained and after they had him under control. And they're the same. He says, in the light most favorable to Dunstan as possible, Officer Douglas continued to assault him after he was fully restrained. And then it says thus... Then with respect to the processing center incident, he says Dunstan's allegation that Greenfield continued beating him after he was fully restrained on the floor is not blatantly contradicted by the record. So I think part of his claim is here is that they continued beating him after he was fully restrained. I think that is what Judge Fox looked at in the pod incident was and he kind of cuts it into three segments, I think. It's okay, you pled guilty to assault. So Judge Fox says, I'm going to look at... You said that you were guilty of assault. So this kind of second phase of the interaction with Douglas, you can't recover for. The first phase, we'll let a jury decide about who initiated. And the third phase, we'll let a jury decide whether there was force used after the plaintiff was subdued. Now, I think what the guilty plea does is to say not so much what Judge Fox looked at as an acknowledgement of what the plaintiff did, but the guilty plea because it does incorporate that fact that the plaintiff did not violate any constitutional right, didn't exceed the duties of his office. We believe that would encompass whether there was an initiation or not and whether there was a continued use of force after it was necessary. And so the plaintiff by the guilty plea said, no, none of those things occurred. In the motion for appropriate relief, which was not appealed, Judge Stevens found, as a matter of law, that the defendant, it was the criminal defendant, did not make an adequate showing that there was any alleged violation of a constitutional or statutory right that affected his guilty plea. That's in page 125 of the record. As to the processing center, frames 982 to 991, I think, are very, very clear. The inmate does not get to decide where he's housed or how he's disciplined. And if he says, well, gosh, I didn't want to go into that room because there was no video in the room, it's not up to the inmate to decide where he's housed. It's not up to the inmate to decide what type of discipline he's going to receive. The officers very, very passively directed him into the room. He very aggressively refused to go into the room. He very aggressively turned. And whether he head-butted and actually made contact or not or simply made the move to threaten to assault Lieutenant Greenfield, Greenfield is certainly entitled under the Wake County Detention Policy to use the force reasonably necessary when under an imminent threat of assault. And clearly, that's what's going on. And again, we have five or six seconds of takedown and subduing the plaintiff. There is, in the video just, it does not show any excessive force. And again, the cases that the trial court relied on were situations where batons were used, nightsticks were used, the Orem case, a stun gun to somebody who was handcuffed and also restrained in the feet. All right. Thank you, sir. Thank you, Henry. We'll come down and recounsel and move directly into our second case.
judges: J. Harvie Wilkinson III, Robert B. King, Clyde H. Hamilton